UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 09–466(A) DSF | | Date | 8/22/13 |
|---|---|---|---|---|

| Present: The Honorable | DALE S. FISCHER, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | Not Present |

| Debra Plato | Not Present | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 10) Paul Cortez Jovel | | NOT | X | 10) Michael J Treman | | NOT | X |

**Proceedings:** (IN CHAMBERS) Order DENYING Defendant's Motion to Preclude the Introduction of Evidence as to Certain Overt Acts  (Docket No. 1534)

Defendant Paul Cortez Jovel seeks to preclude the government from introducing evidence of Overt Acts 23–25 and 82–88 from Count One of the First Superseding Indictment.[1]  Unlike previous challenges to certain overt acts based on "double jeopardy" principles, Jovel's present challenge is based solely on four separate claims of breach of a plea agreement in a previous criminal case, United States v. Paul Milton Cortez Jovel, 2:07–CR–1365 SJO (SJO Case).  For the reasons discussed below, the Motion is denied.

## I. Breach of Agreement to Dismiss Remaining Counts in SJO Case

Jovel first contends that the government breached its agreement to dismiss the remaining counts in the SJO case "because it has effectively re-filed them as overt acts in the First Superseding Indictment."  (Jovel Mot. 15.)  The indictment in the SJO Case (2007 Indictment) charged Jovel with ten counts:  two counts of conspiracy to distribute more than fifty grams of methamphetamine (Count One), one count of distribution of more than fifty grams of methamphetamine (Count Two), one count of conspiracy to distribute more than fifty grams of a mixture of substance containing methamphetamine (Count Three), five counts of distribution

---

[1] Overt Acts 23–25 allege that Jovel participated in the distribution and sale of drugs in August 2006.  Overt Acts 82–88 allege that Jovel made methamphetamine and cocaine sales in February, March, May, June, and July of 2007.  The First Superseding Indictment alleges that these Overt Acts were done in furtherance of the racketeering conspiracy and to accomplish its objects.  (Docket No. 1427, First Superseding Indictment, Count One ¶ 15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

of more than fifty grams of a mixture or substance containing methamphetamine (Counts Four, Five, Six, Seven, and Ten), one count of distribution of more than five grams of a mixture of substance containing a detectable amount of cocaine base in the form of crack cocaine (Count Eight), and one count of distribution of more than fifty grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine (Count Nine). (Docket No. 1194, Jovel Mot. to Strike Portions of the Indictment (Jovel Mot. to Strike) Exhibits at 46–60.)

On March 17, 2008, Jovel pleaded guilty to Counts One and Two of the 2007 Indictment pursuant to a plea agreement (2008 Agreement). (CR 07–1365 SJO, Docket No. 53.) As part of the 2008 Agreement, Jovel admitted that beginning prior to August 1, 2006 and continuing to August 4, 2006, he conspired with two others to knowingly and intentionally distribute more than 50 grams of actual methamphetamine. (2008 Agreement ¶ 10.) Jovel also admitted that on August 1, 2006, in furtherance of the conspiracy, he sold approximately 114.4 grams of actual methamphetamine for $4,000 and collected the proceeds on August 2 and August 4, 2006. (Id.) Jovel further admitted that between August 1, 2006 and June 20, 2007, he distributed on several separate occasions, another 113.2 grams of actual methamphetamine. (Id.)

In the 2008 Agreement, the government agreed "to move to dismiss the remaining Counts" (i.e., all counts other than 1 and 2) and "not to further prosecute defendant for violations of 21 U.S.C. §§ 841 or 846 arising out of defendant's possession of the controlled substances seized by law enforcement at the time of defendant's November 15, 2007 arrest." (Id. ¶ 19(c) and (e)). Jovel nevertheless "underst[ood] that the [United States Attorneys Office (USAO)] is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement." (Id.)

The Court is bound to apply "contract law standards" when interpreting the 2008 Plea Agreement, which means that the plain language of the Agreement controls. United States v. Ellis, 641 F.3d 411, 417 (9th Cir. 2011) (explaining that "[a]s variants of a contract, plea bargains are measured by contract law standards" and that "[c]ourts enforce the literal terms of a plea agreement" (citations omitted)). There is no ambiguity in the language of the 2008 Plea Agreement. It does not bar the government from pursuing RICO charges against Jovel or prevent the government from including as overt acts instances of drug sales described in the "remaining counts" of the 2007 Indictment. RICO charges are distinct from distribution and conspiracy to distribute charges. As the Ninth Circuit explained in its prior opinion in this case, United States v. Morales, 465 Fed. App'x 734, 738 (9th Cir. 2012), and in United States v. Luong, 393 F.3d 913, 915 (9th Cir. 2004), successive prosecution of a RICO conspiracy and a predicate act is not improper. The terms of the 2008 Plea Agreement are clear. The government is barred only from charging Jovel with violations of 21 U.S.C. §§ 841 and 846 arising out of defendant's possession of controlled substances on November 15, 2007. The government has not breached the 2008 Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

## II. Breach of Agreement to Applicable Sentencing Guideline Ranges in Previous Case

Jovel next argues that the government has breached its agreement to stipulate to certain sentencing guideline ranges and is "seeking through the First Superseding Indictment to obtain a greater sentence for the same conduct." (Jovel Mot. 15.) The Ninth Circuit has already considered and rejected this argument. See Luong, 393 F.3d at 917 (citing Witte v. United States, 515 U.S. 389, 403–04 (1995); United States v. Jernigan, 60 F.3d 562, 564–65 (9th Cir. 1995)) (rejecting the argument that "subsequent prosecution is precluded where conduct has already been used to determine a defendant's offense level under the United States Sentencing Guidelines"); see also United States v. Rone, 598 F.2d 564, 571–72 (9th Cir. 1979) (citations omitted).[2] Jovel's argument is premature. If Jovel is convicted of RICO conspiracy, he may raise any appropriate objections with respect to the 2008 Agreement at sentencing. The 2008 Agreement does not preclude the government from introducing evidence of the Overt Acts at issue.

## III. Breach of Implied Agreement Not to Further Charge MS-13 Drug-Related Conduct

Jovel next argues that the government breached an implied agreement not to further charge Jovel for any MS–13 drug-related conduct. The Ninth Circuit has "made clear that several well-established rules of interpretation govern our consideration of the plea agreement in dispute." United States v. Clark, 218 F.3d 1092, 1095 (9th Cir. 2000). "If the terms of the plea agreement on their face have a clear and unambiguous meaning, then [the Court] will not look to extrinsic evidence to determine their meaning." Id. (citation omitted). "If, however, a term of a plea agreement is not clear on its face, [the Court] look[s] to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement." Id. (citation omitted). If, after examining the extrinsic evidence, the Court "still find[s] ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government ordinarily must bear responsibility for any lack of clarity." Id. (citation and

---

[2] As explained above, the plain text of the 2008 Agreement does not bar the government's current prosecution of Jovel for RICO conspiracy. That a conviction on the RICO charges would serve to increase his criminal history does not mean that the government's current prosecution is impermissible. See Witte, 515 U.S. at 398 (explaining that "[t]raditionally, sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior" and that "we specifically have rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime" (citations and internal quotation marks omitted)). In any event, separate punishment for a violation of RICO is permissible. Rone, 598 F.2d 564, 570–71.

quotation marks omitted).

Jovel does not argue that any portion of the 2008 Agreement is unclear. Instead, he argues that the government made an "implied agreement" that it would not "further charge Mr. Jovel for his MS–13 drug related conduct . . . ." (Jovel Mot. 15.) No such agreement appears on the face of the document and there is no evidence from Jovel or his prior counsel that there was any such agreement. Jovel has not shown that the government impliedly agreed not to bring RICO charges against him.[3]

## IV. Breach of Representation to Dismiss Pending Counts in Previous Case

Finally, Jovel argues that: "The government breached its representation to Mr. Jovel and to the district court judge in 2:07–CR–01356 that by accepting the plea agreement, that also contained provisions for the dismissal of pending counts, the charges of conviction and the related sentencing stipulations adequately reflected the seriousness of Mr. Jovel's behavior and that the sentence they in essence agreed to would not undermine the statutory purposes of sentencing and the guidelines. See U.S.S.G. § 6B1.2. In other words, that the sentence complied with the factors in 18 U.S.C. § 3553." (Jovel Mot. 15.) As discussed above, under binding Ninth Circuit and Supreme Court precedent, the government is free to bring a separate RICO charge against Jovel and, if he is convicted, may argue for appropriate punishment based on that conviction. Jovel may raise these arguments, if appropriate, at sentencing, but he has not shown that preclusion of evidence of the Overt Acts is warranted.

IT IS SO ORDERED.

---

[3] In his reply, Jovel claims that "it is clear from the language of the plea agreement that the parties intended the scope of the plea agreement to include more than just the two charges enumerated by the government" and that "the agreement encompassed all of the drug transactions that were identified in the 2007 indictment." (Jovel Reply 4.) He then cites a portion of the Agreement that described drug distribution transactions occurring between August 1, 2006 and June 20, 2007. (Id. at 5.) This portion of the agreement describes Jovel's participation in substantive drug offenses, not his participation in a RICO conspiracy which includes murder and numerous other allegations in addition to drug distribution allegations. The plain language of the plea agreement simply does not support Jovel's assertion that the government intended to bargain away its right to later bring RICO charges. In fact, as noted above, Jovel acknowledged in writing that he "underst[ood] that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement." (2008 Agreement ¶ 19(b).) "[I]t does not matter in which order the prosecutions occur" when the government "prosecute[s] a RICO conspiracy and a predicate act successively." Luong, 393 F.3d 913. This successive prosecution is not improper.